Case number 20-5221, Jason B. Lee, appellant versus Merrick B. Garland, attorney general of the United States. Mr. Fisher for the appellant, Mr. Cobble for the appellate. Mr. Fisher, good morning. Good morning, Your Honor. May it please the court, Morris E. Fisher for the appellant, Mr. Lee. So, Your Honor, the case basically, there are three central points that I'd like to make in this case. The first is that with just, I just want to touch briefly on the Title VII and the Equal Protection Clause of the Constitution, that it's kind of like an either-or here because the court knows that, as established in some of these other cases, Webster v. Doe, that the EGAN does not bar the information gathering aspect of what's involved in these investigations. So, really, there's an issue then if we're going to say that Mr. Lee had a Title VII claim and that claim was timely based on the final ARC decision in 2018, then that claim was only on the information gathering stage of the case and that's not barred by EGAN, okay? And it's just that the tangible effects of that information gathering stage didn't occur until there was a final adverse action in 2018. And then if the court, and then if the government argues, which their argument is, that Title VII doesn't even cover that, meaning if Title VII doesn't cover that, so then we have the Equal Protection Clause that does. And then if you look at the case of Davis v. Passman, where the court goes into a whole thing here about how these have to be the bulwark against assumption of legislative or executive power that this woman, who was a congressional staffer who suffered discrimination, had no other means to go ahead and bring her discrimination case, that's where we need the you had a concurrence in the Palmieri case that basically said this was an open question. The big question here, which is whether EGAN bars constitutional claims under the Equal Protection Clause, is an open question. Right, that's right. And I think that in some of these other cases, the government, I mean, because it's open, you don't have authority that we can review this sort of claim, right? You're asking us to extend review beyond where we've gone before. Well, we know that basically we do have authority in Webster v. Doe. The court does have authority. In some of these earlier cases, I know the court said something like, well, this guy was pro se, and he had a 163-page complaint that nobody really understood, and so on and so forth. But now we don't have that. Now we have authority. I think we have authority from the Davis case. Why is this case? Davis applied Bivens, which is a great case on implied judicial review authority, but Bivens hasn't fared terribly well in the last 40 years. I understand. And let me get in. I think this is a good time here, because in the time that we have left, and I don't think that this case required more than 10 minutes of argument, but I think that one of the things that I saw in the Ziegler v. Abbasi case dealing with the First Amendment was basically, look, the government orders hundreds of these illegal aliens into custody. Six Arab Americans, maybe rightfully so, didn't like it, said, look, the people who kind of imprisoned us here, so on and so forth, we're going to go after them. And the Supreme Court said, basically, look, this is more of a policy thing. This is not really what Bivens is for. This is what you're really trying to do here, is you're trying to go ahead and undermine or second guess a policy made at very, very high levels here in this country. And Bivens is not for that. And I think the district court judge in this case kind of sort of does the same thing. The district court says, in his opinion, that basically, the decision to recognize the damages remedy requires an assessment of its impact on government operations system-wide. Okay, that's not Mr. Lee's case. Mr. Lee is not saying, look, here's what we want you to do. We want you to take a look at either the entire review process of how these polygraphs are administered. We want you to take a look, are we being targeted on a systemic level? Okay, they're asking more. No, that's fair. Your claim is individualized. Right. But you are asking us to probe the motivation of the executive branch decision maker. And that is something that's pretty intrusive. But this is a lower level decision maker. And this is basically, you're saying out of the scope of what he was doing. Okay, I mean, and some of the things that we've played in the complaint. Not out of the scope of what he was doing. It's a perfectly legitimate function. Your theory is just he had a bad motive. I mean, they're entitled to examine people to make clearance determinations. They are. Not in the way that this particular, or these two particular agents did. I mean, accusing this man of being a Chinese spy, along with him and his father. And that affected our contention is that affected this person's that affected the test. Okay. Other people didn't have that. And then also the comments about the articles about we don't think that you're loyal here, because you put these articles on Fox News, and so on and so forth. I mean, I think that's not a typical thing. We're not saying that listen, part of what the DOJ or the FBI does here when they test for security clearances is really get under this guy's skin and really find the thing that's most sensitive about the guy, and about the history and about his heritage. And let's see if this guy can withstand that kind of harassment and abuse. I mean, that's not that is there is no way that's the policy of DOJ or whoever administered this test, meaning these were rogue actions by these people. And that's what distinguishes this case from the Ziegler versus Abbasi case. And that's what the fear that's why there's no fear there. Well, there's always a fear. But I think that what outweighs the situation in Bivens, where we're going to have everybody in the world, every federal employee who doesn't have it their way, bring some sort of First Amendment claim or equal protection claim against whomever. Okay, just for the heck of it, that's not this case. This is this is an equal if we rule in your favor. Yeah, as to reviewability, you're that might be an argument that some equal protection claims are stronger than others on merits. But if we rule in your favor on reviewability, what limiting principle is there that would prevent everyone who was denied a clearance from challenging the motives of the people who gathered the information that went into that decision? I would say high level decisions in terms of how information is gathered, high level, high level decisions, even on how we're going to do things. Okay, similar to Ziegler versus Abbasi, where these decisions are made at very, very high levels. Okay. I think that eliminates that class of claims for those people. And I just think that is enough of a protection. I think the court, I think the court has the ability to distinguish in those factors, what's going to be an attack on the overall system, and what's going to be an individual case for for this employee. So that's a limiting principle, although a bit vague. But you're saying, well, we can handle that. So limiting principle that still allows any such case coming from originating with the denial of a clearance, right? As long as as long as the attack is based on, let's say what happened at the at the scenario, and it's against a low level person. And and the claim is this particular guy, this particular official misused his power to affect something in the investigative process, which ultimately denied me my clearance. Yes, I think that's very fair. I'm finally just one I see my time just is over. But the last point is that there didn't seem to be any argument at all, against the injunctive relief on the First Amendment. I mean, if we go back to Paul, Mary, I know that was one of the things that the court said is, you know, one of the reasons why we don't really have to decide this is because there was no argument by this guy on some of these other claims. So I think in all fairness, the case should proceed on that. But I think the Bivens issue is critical. I think that right now, free speech in this country is under attack. Okay, I think that we don't want a situation where someone has more rights on a Bivens claim on a sexual harassment or gender discrimination, which is a bad thing. I mean, everybody agrees that's a bad thing. But I don't think we want a system where where that's has greater protection than a free speech case. All right. Thank you. Thank you, Mr. Koppel. Good morning, Your Honors. May it please the court. I'm Josh Koppel on behalf of the United States. I want to pick up on something that I think Judge Cassis was getting at earlier, which is that no court has ever held that a claim like this challenging the determination to revoke security clearance may proceed either under Title VII or the Equal Protection Clause. And it simply can't be the upshot of Egan and the myriad cases in this court and the other courts of appeals dismissing Title VII claims challenging the revocation of security clearance that the plaintiff can simply move to for leave to amend his complaint and relabel essentially the same There are really two reasons for this. Of course, we set out in our briefs. The first is that as the Supreme Court held in Brown v. GSA, Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment. And that's the holding of the Fifth Circuit in Perez v. FBI and the Ninth Circuit in Brazil v. Department of the Navy. The Title VII precludes an equal protection claim challenging the revocation of security clearance. And second, the equal protection claim is barred by Egan. Of course, in Egan, the Supreme Court explained that the executive branch's power to deny or revoke a security clearance stems from the president's authority under Article II of the Constitution as the commander-in-chief. And the court explained that the predictive judgment of whether someone might compromise sensitive information can only be made by those with expertise in protecting classified information. Outside non-expert bodies like courts or the MSPB can only be the substance of that kind of judgment or determine what constitutes an acceptable margin of error. So, you know, there's a lot of language in Egan that's very helpful to you. But on the other hand, I mean, it really is a case about the authority of the MSPB to do statutory authority of the MSPB to review certain kinds of decisions under the CSRA, right? This is about the Article II interests of the president bumping up against the Article III. I imagine it's due process interests in securing review of constitutional claims. And I don't see a whole lot in Egan or Webster or the Title VII cases to help me resolve that question. So, can you give me a sort of first principles way of thinking about this? Is this a Youngstown case? I think that- Is it a procedural due process case thinking about Matthew's balancing? What's the right analytical framework for weighing those constitutional considerations? I think that Egan is an application of the political question doctrine, or at least establishes the basis for applying the political question doctrine here. And Egan establishes two of the Baker v. Carr factors, and any one of which would put the question of whether a security finish should be revoked in the political quest, would make that a political question. So first, Egan shows that there is the constitution contains a textually demonstrable commitment of authority to the executive branch. The president, again, is acting pursuant to his Article II powers, commander in chief, when the executive branch revokes a security clearance. And second, there's no judicially discoverable or manageable standard for reviewing the determination to revoke a security clearance. That determination requires a predictive judgment about uncertain future events, and whether the employee or the individual would be able to protect classified information. That's not something within the expertise of a court. Now, but I mean, we do think it's- we normally think it's within the expertise of the court to make the sometimes very difficult judgment whether an executive actor has made a decision for a prohibited reason, like racial discrimination, as opposed to for any other reason. But that's right. But, you know, Egan, again, speaks to this specific context where, you know, there are national security concerns. And the- you know, reviewing a Title VII claim, equal protection claim, doesn't only, of course, require determining whether there was some kind of discrimination in the process. Of course, then the court has to go on, you know, under the McDonnell-Douglas test, look at the- here would be the FBI's proffered legitimate non-discriminatory reasons for revoking the security clearance, and determining whether those would have supported the decision. And that is, you know, fundamentally a- a- the kind of decision not within the expertise of courts that relates to, again, to the predictive judgment about whether someone, you know, in- in future circumstances could be compelled to disclose just touching very briefly on the Bivens point, because that took a lot of time in opposing counsel's argument. You know, the starting point, of course, is equally a bossy, and there's no question that this is a new context. And so extending Bivens to this context is certainly a disfavored judicial activity. But there's- and there are numerous special factors here that strongly counsel hesitation before extending a judicially created private right action for damages. But the one that I really want to highlight is the concern that if polygraph examiners, decision makers, with regard to the decision to revoke a security clearance, face the prospect of individual liability, they might certainly censor themselves, not ask the tough questions, not press the- the subject, you know, out of fear that- that they'll be subject to that kind of suit. And that is, you know, certainly very concerning in the national security context. Unless the court has further questions, we ask that the court affirm the judgment of the district court. All right. Thank you. Mr. Fisher, why don't you take two minutes? Okay, thank you. So I think that the last point that my adversary made, I think that is the guts and the essence of this case. Okay. Again, this is somebody saying, okay, Mr. .87 of the proposed amended complaint, that Mr. Sebelia, the officer saying something that this you plaintiff, you Mr. Lee, this is a cowardly attempt to hide identity while posing, knowing false disparaging remarks about the FBI in a news article. Okay, that is free speech. That is somebody's ability. Meaning there was no contention here by the government that what you disclosed to Fox News was some sort of classified information or anything like that. Okay, it was you, you reported something, you reported a concern to the media. And I don't like it. And I think that your, your loyalty is in question for this, because this is a security force, who ultimately is loyal to the President. Okay, and without getting over dramatic here, what does that sound like? Okay, isn't that any totalitarian regime? I mean, we have basically a constitution that steps in and says, this is different. This, this is not some policy thing or anything like that. This is a specific low level person that, that infringed against this guy's ability for free speech. I have nothing further. Thank you. All right. Thank you. Madam Clerk, if you'd call the next case.
judges: Henderson, Katsas, Ginsburg